CHICAGO TITLE & TRUST COMPANY, Plaintiff-Appellee, v. THE DE-
PARTMENT OF REVENUE, Defendant-Appellant.

First District (3rd Division)   No. 84—800

Opinion filed August 20, 1986.

Neil F. Hartigan, Attorney General, of Springfield (Karen L. Boyaris,
Special Assistant Attorney General, of Chicago, of counsel), for appellant.

Douglas H. Walter and Robert L. Wiesenthal, both of Bell, Boyd &
Lloyd, of Chicago (Dennis M. O'Keefe and Thomas G. Lyons, both of Ashen-
den, Lyons & Ward, of Chicago, of counsel), for appellee.

JUSTICE McGILLICUDDY delivered the opinion of the court:

Defendant, the Illinois Department of Revenue, appeals from a judgment of the circuit court of Cook County which reversed the defendant's determination that plaintiff, Chicago Title & Trust Company, owed a deficiency for Illinois taxes for the years 1971 through 1976.

From 1971 through 1976 plaintiff incurred operating losses. Consequently, plaintiff's taxable income as reported on line 30 of its United States corporation income tax return, Form 1120, reflected negative income. When computing its Illinois base income, plaintiff then entered as its starting figure its Federal taxable income, which was the negative amount reported on line 30 of its Federal tax return. This entry was in accord with the requirements of Illinois Form IL-1120 issued by the defendant. As a result, plaintiff reported no tax liability for the years 1972, 1973, 1974 and 1976. It reported a tax liability of $15,407 for 1971 and $9,421 for 1975.

The defendant determined that the plaintiff paid insufficient taxes from 1971 through 1976, because it used a negative number as its starting point for determining Illinois base income when it should have used zero or a positive number. Accordingly, the defendant issued notices of deficiency for those years. Plaintiff filed written protests of the proposed assessments with the defendant. After a hearing, the hearing officer concluded that the additional assessments of tax reflected in the notices of deficiency should be sustained. The plaintiff was required to use zero, rather than a negative number, as the starting point in arriving at its base income.

On December 31, 1980, plaintiff filed a complaint in the circuit court of Cook County seeking review of the defendant's decision. On March 16, 1984, the trial court reversed the defendant's determination of deficiencies. The defendant now appeals this decision. The sole issue presented for review is whether plaintiff is required under the Income Tax Act (Ill. Rev. Stat. 1973, ch. 120, par. 1—101 *et seq.*) (Act), as it existed during the years in question, to use zero or a positive number, rather than a negative number, as the starting point for calculating Illinois base income.[1]

The Act defines net income as that portion of a taxpayer's base income less standard exemptions. (Ill. Rev. Stat. 1973, ch. 120, par.

---

[1]We note that House Bill 1402, now Public Act 83—951, effectively adopted the plaintiff's position by amending sections 2—203(b)(2)(E) and 2—203(e)(1) of the Act to allow a taxpayer to report negative taxable income. Since this amendment became effective December 1, 1983, it does not control the taxable years at issue in the instant case.

2—202(a).) It defines a corporate taxpayer's base income as taxable income subject to modification. (Ill. Rev. Stat. 1973, ch. 120, par. 2—203(b)(1).) Taxable income is "the amount of *** taxable income properly reportable for federal income tax purposes for the taxable year under the provisions of the Internal Revenue Code." (Ill. Rev. Stat. 1973, ch. 120, par. 2—203(d)(1).) The starting point for calculating a corporate taxpayer's Illinois base income is its Federal taxable income as defined in section 63 of the Internal Revenue Code.

Section 63(a) of the Internal Revenue Code of 1954 defines the Federal taxable income of a corporation as gross income minus allowable deductions. (26 U.S.C. sec. 63(a) (1970).) It necessarily follows that in years in which allowable deductions exceed gross income, taxable income under section 63(a) will yield a negative figure. (*Farmers Grain Marketing Terminal v. United States* (N.D. Miss. 1977), 434 F. Supp. 368, 378, *aff'd* (5th Cir. 1980), 609 F.2d 1006.) Congress has not provided otherwise, and the concept of negative taxable income has been widely recognized. See, *e.g.*, *Farm Bureau Services, Inc. v. United States* (W.D. Mich. 1982), 547 F. Supp. 1279; *Farmers Grain Marketing Terminal v. United States* (N.D. Miss. 1977), 434 F. Supp. 368, 378; *Tebon v. Commissioner* (1970), 55 T.C. 410.

As the legislative history of the Illinois Income Tax Act indicates, "[t]he key feature of the [Act] is that it is based on the federal concepts of taxable income and on amounts reported on the taxpayer's federal income tax return." (76th Ill. Gen. Assem., Proceedings Before the Senate Public Finance Committee, May 21, 1969.) The Act itself explicitly provides that any term used therein "shall have the same meaning as when used in a comparable context in the United States Internal Revenue Code of 1954." (Ill. Rev. Stat. 1973, ch. 120, par. 1—102.) Thus, the Illinois Act clearly borrows the Federal concepts of taxable income. It does not change or modify the Federal definition, nor does it specifically provide that taxable income may not be less than zero. The definition of taxable income under Illinois law should conform with the Federal definition. As stated above, the Federal definition of taxable income recognizes the concept of negative taxable income. Illinois, therefore, must also recognize that concept.

■ Illinois Form IL-1120 requires that a taxpayer transfer the Federal taxable income from line 30 of its United States Form 1120 to the State return as the starting figure for the computation of its base income. This Illinois form, which has the effect of a regulation (Ill. Rev. Stat. 1973, ch. 120, par. 15—1501(a)(19)), does not provide that a negative taxable income on line 30 of the Federal return must be changed to a zero or a positive amount on the State return. We

find therefore that plaintiff properly transferred from its Federal to its State return the negative amount representing taxable income to be used as the starting figure for the computation of its base income.

Defendant, however, argues that plaintiff's base income cannot be less than zero. In support of its position, defendant cites *Brown Group, Inc. v. Administrative Hearing Commission* (Mo. 1983), 649 S.W.2d 874, in which the court held that the base period income of a Missouri corporation could not be less than zero. We note at the outset that the holding in *Brown* does not bind this court. Moreover, the holding is inapposite to the instant case for two reasons. First, the majority in *Brown* held as it did because the Missouri tax statute lacks the express prohibition against double deductions which is contained in Illinois law. (Ill. Rev. Stat. 1973, ch. 120, par. 2—203(f).) The court attempted to accomplish judicially that which Illinois had accomplished legislatively, that is, to prevent "multiple benefits arising from a single loss." (*Brown Group, Inc. v. Administrative Hearing Commission* (Mo. 1983), 649 S.W.2d 874, 877.) Second, the Missouri tax statute explicitly states that base income cannot be less than zero. 649 S.W.2d 874, 877.

Defendant also relies on *Tebon v. Commissioner* (1970), 55 T.C. 410; *Sheils v. State Tax Commission* (1981), 52 N.Y.2d 954, 419 N.E.2d 871, 437 N.Y.S.2d 968, *rev'g* (1978), 422 N.Y.S.2d 479, 72 A.D.2d 896, and *Sun Oil Company of Pennsylvania v. Comptroller* (April 16, 1982), Md. Tax Rep. (CCH) par. 200—960), in further support of its position that taxable income can never be less than zero. These cases are distinguishable from the case before us. *Tebon* involved construction of the term "averageable income" under section 1301 through 1305 of the Internal Revenue Code. These sections explicitly state that, when computing base averageable income, the income averaged cannot be below zero. The instant case simply involves the definition of taxable income and does not concern the availability of the tax-benefit provisions of income averaging. Both *Sheils* and *Sun Oil* involve construction of the carryover provisions of section 172 of the Code, not the definition of taxable income in the current year. In *Sheils* and *Sun Oil*, the taxpayers attempted to claim greater net operating losses on their State returns than they had reported on their Federal returns. Resolution of the issues in both cases involved the taxpayers' failure to conform to the Federal concepts of taxable income and loss in computing their State income tax. In the instant case, it is the taxing body and not the taxpayer that seeks to depart from conformity with Federal principles.

■ Defendant contends that negative taxable income can only be

treated as a net operating loss under section 172 of the Internal Revenue Code. For Federal income tax purposes, section 172 provides that a net operating loss for any taxable year shall be a net-operating-loss carryback to each of the three taxable years preceding the taxable year of such loss and a net-operating-loss carryover to each of the five taxable years following the taxable year of said loss. Therefore, a taxpayer for Federal taxes may offset a loss in years prior to or subsequent to the loss. We find no authority stating, nor can we presume, that Congress intended never to allow a taxpayer to offset a loss in the year that loss is incurred. We do not find convincing the defendant's argument that plaintiff in the instant case be required to treat its losses for the years 1971 through 1976 exclusively as net operating losses under section 172. As stated above, taxable income for State tax purposes is defined in section 63(a).

■ Finally, we note that in addition to the objective of the Illinois Act to conform with Federal principles, its general purpose is to impose "[a] tax measured by net income." (Ill. Rev. Stat. 1973, ch. 120, par. 2—201(a).) Our resolution of the issue before us must conform with this general purpose. *Continental Illinois National Bank v. Lenckos* (1984), 102 Ill. 2d 210, 464 N.E.2d 1064, *cert. denied* (1984), 469 U.S. 918, 83 L. Ed. 2d 231, 105 S. Ct. 296.

To summarize, plaintiff's losses exceeded its gross income for the years 1971 through 1976, so that plaintiff reported negative taxable income on line 30 of its Federal return in accord with Federal principles of taxable income. Following the instructions contained in the defendant's regulations, plaintiff transferred this amount to be used as the starting figure for the computation of its Illinois base income. We find that plaintiff properly used this negative figure, rather than zero; hence, it owes no deficiency for those tax years. This determination is consistent with the Federal concepts of taxable income as well as with the general purpose of the Illinois Act to impose a tax measured by net income.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

RIZZI, P.J., and WHITE, J., concur.